UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE


| | | |
|---|---|---|
| LORI ANN YANCEY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 3:04-CV-556 |
| | ) | 3:04-CV-610 |
| MARTY CARSON, et al., | ) | CONSOLIDATED |
| | ) | (VARLAN/SHIRLEY) |
| Defendants. | ) | |

## **MEMORANDUM & ORDER**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), the Rules of this Court, and by Order [Doc. 54][1] of the Honorable Thomas A. Varlan, United States District Judge, for disposition of the defendants' Motion in Limine to Exclude Qulia's Testimony. [Doc. 42] On October 5, 2007, the parties came before the Court for a hearing on the instant motion. Attorney David Wigler was present on behalf of the plaintiffs and attorney John Duffy was present on behalf of the defendants.[2]

The defendants move the Court to exclude certain opinion testimony of the plaintiffs' expert, Richard Qulia. Specifically, the defendants object to the three opinions identified in Mr.

---

[1] For ease of reference, the Court will refer only to the document numbers identified in the lead case, 3:04-CV-556.

[2] Based on the briefs of the parties, it should have been obvious that this hearing was essentially a pre-trial <u>Daubert</u>-type hearing. As such, the Court expected, as in other <u>Daubert</u> hearings, that the plaintiffs' proposed "expert" witness would testify. Remarkably, the plaintiffs did not have Mr. Qulia present. Accordingly, the Court is left to resolve this issue based solely on Mr. Qulia's expert report. [Doc. 41-7]

Qulia's report, those opinions being that: (1) Mr. Carson's shooting of John John Yancey was intentional; (2) Mr. Carson did not shoot John John Yancey in self defense; and (3) Mr. Carson's account of the shooting indicates consciousness of guilt. The defendants contend that the opinions are inadmissible as expert testimony, are irrelevant, and are overly prejudicial. The plaintiffs oppose the defendants' motion, arguing that the opinions are admissible, relevant, and not overly prejudcial, and that even if the opinions are inadmissible, that it would still be appropriate for Mr. Qulia to testify as to his investigation in this matter.

**I.    BACKGROUND**

This lawsuit arises from the fatal shooting of Hubert Dean "John John" Yancey ("John John Yancey") on November 28, 2003. [Doc. 1] The plaintiffs contend that the defendants are responsible for the wrongful death of John John Yancey, who was fatally shot while performing his duties as a deputy sheriff of Scott County, Tennessee. [Id.] The shooting occurred while John John Yancey and other members of the Scott County Sheriff's Department were conducting a criminal investigation of a trailer located at 2543 Williams Creek Road in Scott County, Tennessee. [Id.] The plaintiffs allege that Sheriff's Deputy Marty Carson intentionally shot and killed John John Yancey during the course of the investigation. [Id.]

**II.    APPLICABLE LAW: ADMISSIBILITY OF EXPERT TESTIMONY**

The defendants have filed a motion challenging the admissibility of Mr. Qulia's testimony under Rule 702 of the Federal Rules of Evidence and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the
> trier of fact to understand the evidence or to determine a fact in issue,

> a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The trial judge must act as a gatekeeper, admitting only that expert testimony that is relevant and reliable. Daubert, 509 U.S. at 589. With regard to scientific knowledge, the trial court must initially determine whether the reasoning or methodology used is scientifically valid and is properly applied to the facts at issue in the trial. Id. To aid the trial court in this gatekeeping role, the Supreme Court has listed several key considerations: (1) whether the scientific knowledge can or has been tested; (2) whether the given theory or technique has been published or been the subject of peer review; (3) whether a known error rate exists; and (4) whether the theory enjoys general acceptance in the particular field. Id. at 592-94. The Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." Id. at 595. "[T]he test under Daubert is not the correctness of the expert's conclusions but the soundness of his methodology." Daubert v. Merrell Dow Pharmaceuticals, Inc., 43 F.3d 1311 (9th Cir. 1995).

Although Daubert centered around the admissibility of scientific expert opinions, the trial court's gatekeeping function applies to all expert testimony, including that based upon specialized or technical, as opposed to scientific, knowledge. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147-48 (1999); Berry v. City of Detroit, 25 F.3d 1342, 1350 (6th Cir. 1994). The trial court's objective "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire, 526 U.S. at 152. The trial judge enjoys broad discretion in determining whether the factors listed in Daubert reasonably

measure reliability in a given case. Id. at 153. With this framework in mind, the Court will now address the defendants' motion.

## III. RICHARD QULIA

The defendants move to exclude the plaintiffs' expert witness, Richard Qulia, from testifying as to his opinions set forth in his preliminary report dated November 9, 2006. [Doc. 41-7]. Specifically, the defendants seek to preclude Mr. Qulia from testifying to three specific opinions: (1) Mr. Carson's shooting of John John Yancey was intentional; (2) Mr. Carson did not shoot John John Yancey in self defense; and (3) Mr. Carson's account of the shooting indicates consciousness of guilt. In support of their argument, the defendants contend that Mr. Qulia is not qualified to opine on the issues presented in his expert report; that Mr. Qulia's opinions are all impermissible attacks on the credibility of one witness by another witness; that Mr. Qulia's opinions impermissibly address the subjective state of mind of Mr. Carson; that Mr. Qulia's opinions invade the province of the jury; that Mr. Qulia's opinions are irrelevant; and that any testimony presented by Mr. Qulia is inadmissible under Rule 403 of the Federal Rules of Evidence because such testimony would be more prejudicial than probative. [Doc. 43] The plaintiffs disagree, arguing that Mr. Qulia's testimony is relevant and admissible.

The plaintiff's oppose the defendant's motion, arguing that Mr. Qulia's experience in training law enforcement officers provides a basis for his expert testimony; that Rule 704(b) of the Federal Rules of Civil Procedure applies only to criminal cases, not civil, and thus testimony as to the defendant's state of mind is not barred; and that even if the three opinions at issue are excluded, Mr. Qulia should still be allowed to testify as to the facts surrounding his investigation in this matter. [Doc. 56]

## A. Qualifications

The Court begins its analysis by noting that Mr. Qulia has approximately thirty-four years of experience with the Federal Bureau of Investigation, including several years of experience as a Polygraph Examiner, as well as several years of experience training other law enforcement officers in the use of firearms and tactical combat procedures. [Doc. 41-7 at 17-18] Mr. Qulia also has approximately three years experience running his own company, which provides, among other things, polygraph services and training in the use of firearms and tactical combat procedures. [Id.] However, while Mr. Qulia is a trained polygrapher, there is no evidence that he has given Mr. Carson a polygraph test. Instead, Mr. Qulia has read Mr. Carson's deposition, has examined the scene of the shooting, and has developed opinions as to Mr. Carson's motivation and actions based upon that limited information.

The Sixth Circuit has previously warned against the dangers of certifying experts in generic areas of expertise, such as the non-existent "field [of] police policies and practices." Berry v. City of Detroit, 25 F.3d 1342, 1352 (6th Cir. 1994). The Berry court expanded its warning as follows:

> Any witness . . . may be allowed to opine based on observation and experience if a proper foundation is laid. But here, there was no foundation at all for discipline testimony, even though it would fall under the general label of "police policies and practices." This term, however, is so broad as to be devoid of meaning. It is like declaring an attorney an expert in the "law." A divorce lawyer is no more qualified to opine on patent law questions than anyone else, and it is a mistake for a trial judge to declare anyone to be generically an expert.

Id.

The Court also finds the case of Fisher v. Ciba Specialty Chemicals Corp., 238 F.R.D. 273 (S.D. Ala. 2006) to be particularly instructive. In that case, the plaintiff property owners brought a putative class action against the defendant chemical company, alleging that they had incurred damages due to the company's pesticide manufacturing. The defendants sought to strike or exclude the expert reports submitted in favor of the plaintiff's motion for class certification. The plaintiff's pharmacology and toxicology expert, Dr. Farber, submitted a report which provided the Court with a detailed discussion on the history and properties of DDT. The Court refused to exclude Dr. Farber, noting that his report "reveal[ed] information that the Court has found nowhere else in the voluminous class certification record," and while noting that such information was not crucial to the Court's class certification analysis, "it is unquestionably useful background data that has enhanced and enriched the undersigned's understanding of the primary chemical compound of interest in this lawsuit." Id. at 280.

The Fisher Court, however, excluded the plaintiff's administrative law expert, Ms. McFaddin. In so doing, the Court noted as follows:

> Much of her report appears to be a factual narrative of contamination-related events occurring at the Ciba plant, as well as Ciba's interactions with regulatory agencies, during the time period at issue. To the extent that McFaddin's report offers a synopsis of facts concerning the Ciba plant based on her reading of other exhibits, it does not state expert opinions at all, but simply provides the witness's slant on facts that are in the . . . record.
>
> * * *
>
> . . . The document reads like the fact section of a brief, not the report of an expert witness. The vast majority of McFaddin's report simply summarizes and states her advocacy-based interpretation of documents in the record concerning Ciba's historical conduct. These statements of alleged fact do not appear to benefit from, or to be based to any extent on, McFaddin's status as a regulatory expert. The

> Court's task in examining the Rule 23 issues presented here is not assisted by McFaddin's one-sided recitation of the record facts. She does not show that she has special skills that render her reading of record documents concerning the history of the Ciba plant, and her conclusions as to what Ciba has or has not done, any more or less persuasive than that of a layperson. For example, McFaddin concludes that Ciba has failed and refused to take action to remediate its off-site contamination. But how is that conclusion bolstered by her expertise as a "regulatory expert"? Is she not simply acting as another advocate for plaintiffs in arguing the facts in a manner that is most beneficial to her clients? How does this purported expert report differ from a supplemental brief submitted by another lawyer for plaintiffs?

Id. at 281.

In the instant case, it is clear that Mr. Qulia does have some experience in training law enforcement officers in the proper use of firearms in combat situations, but the opinions to be offered by Qulia greatly exceed the scope of that expertise. Instead, Mr. Qulia has offered his interpretation of facts that are already in the record. He has essentially marshaled the facts in the record which support the plaintiff's position. The Court finds that Mr. Qulia's proffered opinions simply do not relate to, or benefit from, his expertise as a polygrapher, nor does Mr. Qulia's experience in combat training provide any special insight in this case that would allow him to opine as to the thought processes and motivations of a third party acting in a potential combat situation. The Court does not find that Mr. Qulia's opinions would therefore be helpful to the trier of fact on this issue. For these reasons, Mr. Qulia's testimony will be excluded with respect to his three identified opinions.

**B.    Basis of Opinions**

As an additional basis for the Court's decision, the Court notes that even if the Court found that Mr. Qulia were qualified to offer the opinions in question, the plaintiffs have failed to demonstrate that the reasoning or methodology used by Mr. Qulia was valid and was properly applied to the facts at issue. See Daubert, 509 U.S. at 589. Whether an expert's testimony is based upon scientific, technical, or other specialized knowledge, Daubert and its progeny "require[] a valid . . . connection to the pertinent inquiry as a precondition to admissibility. And where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question, . . . the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of the relevant discipline.'" Kumho Tire, 526 U.S. at 149 (citations omitted).

The Court finds that the report of Mr. Qulia is virtually devoid of any evidence that his opinions were arrived at by any methodology, let alone any reliable methodology. Rather, his opinions are merely based on the use of selective testimony, drawing biased inferences therefrom, and then making what are essentially legal arguments as to the conclusions that should be drawn. As such, his report is more in the nature of an attorney's closing argument than expert testimony. There is little, if any, indication of the principles upon which his opinions are grounded, the methodology used, or how that methodology was applied. There is no way to objectively test his "technique" or approach, because it is merely his own subjective conclusory opinions. Such an approach cannot be tested for reliability. Nor is there any indication these opinions derive from any generally accepted principles, methodology, or independently conducted research. Rather, they appear to be opinions reached solely for the purpose of testifying in this litigation.

In performing its gatekeeper function, this Court must have sufficient information regarding the basis for the opinions reached, the principles and methodology employed, and their application. In this case, the plaintiffs essentially ask the Court to take Mr. Qulia's word for his reliability and at best offer only subjective, self-serving assurances of reliability. This Court finds that is precisely the type of "expert" testimony warned against by <u>Daubert</u> and <u>Kumho Tire</u>.

Additionally, while Mr. Qulia's testimony is based upon his knowledge and experience training other law enforcement officers, the Court finds that the testimony Mr. Qulia seeks to offer extends far beyond opining as to what sort of training Mr. Carson should have received, instead concluding that Mr. Carson must have acted in a certain manner and with certain motivations. The Court cannot find that Mr. Qulia's opinions are supported by the necessary reliable basis in the knowledge and experience of the relevant discipline, and thus his opinions must be excluded.

**C.** **Ultimate Issue**

As a further basis for the Court's decision, the Court finds that the opinions to be offered by Mr. Qulia express inadmissible legal conclusions. While Rule 704 of the Federal Rules of Evidence does not preclude an expert opinion that "embraces an ultimate issue to be decided by the trier of fact," the Sixth Circuit has held that "the issue embraced must be a factual one." <u>Berry</u>, 25 F.3d at 1353. In the instant case, Mr. Qulia takes the facts, analyzes them, and concludes that Mr. Carson must have intentionally shot John John Yancy. Whether Mr. Carson acted intentionally, whether he acted in self-defense, and whether Mr. Carson's testimony indicates consciousness of guilt are not factual determinations, but instead are simply Mr. Qulia's "legal" opinions (for which he is not qualified to testify) based upon the facts as he has interpreted them. Thus, Mr. Qulia's

opinions are inadmissible, because they do not merely embrace the ultimate issue, but instead seek to completely weigh the evidence, assess credibility, and resolve the matter without the jury's assistance. The Court further finds that Mr. Qulia's opinions will not assist the trier of fact. Untrained lay men and women can determine these issues, after hearing the facts, without the assistance of Mr. Qulia's unreliable opinions.

## IV. CONCLUSION

For the reasons discussed above, the Court finds that Mr. Qulia is not qualified to offer the three opinions identified in his expert report. Accordingly, the Court finds the defendants' motion [Doc. 42] to be well-taken and the same is hereby **GRANTED in part**. Additionally, the Court notes that the defendants requested that Mr. Qulia's opinions be excluded both at trial and during the District Court's consideration of the then pending motion for summary judgment. The District Court has since resolved the motion for summary judgment [See Docs. 57, 58], thus, the defendants' motion [Doc. 42] is **DENIED in part as moot**, to the extent that the motion for summary judgment has already been resolved.

In light of this Court's ruling, Mr. Qulia shall not be allowed to testify as to what Mr. Carson did, what he did not do, his subjective intent, his state of mind, or what motivated his action or inaction. Nor shall Mr. Qualia be allowed to introduce the three identified opinions indirectly by discussing proper tactical training and seeking to apply it to Mr. Carson or this case. The Court does not exclude[3] Mr. Qulia from testifying as a fact witness (including such areas of discussion as the

---

[3]In ruling that Mr. Qulias' factual testimony is not excluded, the Court does not rule that the Mr. Qulia shall necessarily be allowed to offer such testimony at trial. Rather, the District Court will make the final determination of admissibility regarding any factual testimony at trial based upon the evidentiary landscape before it at that time.

dimensions and configuration of the trailer where the shooting occurred, the locations of certain fixtures, such as lights or doors, therein, or the aural and visual differences between the firing of a shotgun and a pistol), so long as Mr. Qulia does not attempt to introduce impermissible opinion testimony under the guise of factual testimony.

**IT IS SO ORDERED.**

ENTER:

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge