UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| LORI ANN YANCEY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 3:04-CV-556 |
| | ) | No. 3:04-CV-610 |
| MARTY CARSON, | ) | (VARLAN/SHIRLEY) |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This matter is before the undersigned pursuant to 28 U.S.C. § 636(b), the Rules of this Court, and by Order [Doc. 144] of the Honorable Thomas A. Varlan, United States District Judge, for a report and recommendation on the Plaintiffs' Motion for Costs, Including Attorneys' Fees. [Doc. 137] For the reasons set forth below, the undersigned **RECOMMENDS** that the plaintiffs be awarded **$105,775.00** in attorneys' fees.[1]

**I.     BACKGROUND**

The plaintiffs brought the first of these two consolidated actions, 3:04-CV-556, on November 11, 2006, alleging nine causes of action, including violation of the plaintiffs' civil rights, wrongful death, and various other state law claims. [3:04-CV-556, Doc. 1] On December 23, 2004, the second of the two, 3:04-CV-610, alleging similar civil rights violations, wrongful death, and other

---

[1] Pursuant to the Local Rules of this District, the Clerk of the Court addresses costs in the first instance, subject to appeal to the District Court. E.D.TN. LR 54.1. Accordingly, the Court does not address the plaintiffs' costs herein, instead leaving that matter for the Clerk of the Court.

state law claims, was removed from the Circuit Court for Scott County, Tennessee. [3:04-CV-610, Doc. 1] On January 31, 2005, the two cases were consolidated at the request of the parties. [Doc. 11][2] On February 10, 2005, the defendants filed their answer, generally denying liability. [Doc. 12]

A jury trial was initially scheduled for August 14, 2006 [Doc. 15], but continued by motion of the parties, first to February 26, 2007 [Doc. 22], and then to July 24, 2007. [Doc. 26] The continuances were requested to allow the parties further time to complete discovery, to retain experts, and to file dispositive motions. On April 11, 2007, the defendants filed their motion for summary judgment, asking the Court to dismiss all of the plaintiffs' claims. [Doc. 30] On May 14, 2007, the plaintiffs filed their response in opposition to the defendant's motion for summary judgment. [Doc. 39]

On June 1, 2007, the defendants filed their motion to exclude the testimony of the plaintiffs expert, Richard F. Quilia. [Doc. 42] On June 13, 2007, the plaintiffs again moved to continue the trial, stating that new evidence had been discovered and that additional time was needed to prepare for trial in light of this new evidence. [Doc. 47] That same day, the plaintiffs also filed a supplemental response in opposition to the defendants' motion for summary judgment, presenting the plaintiffs' newly discovered evidence in support of the plaintiffs' claims. [Doc. 48] On June 15, 2007, the unopposed motion to continue was granted, and the trial was continued to November 5, 2007. [Doc. 49]

On September 27, 2007, the plaintiffs filed their response in opposition to the defendants' motion to exclude. [Doc. 56] On October 4, 2007, the defendants' motion for summary judgment was granted in part, and denied in part, dismissing the plaintiffs' claims as to defendants Jim Carson,

---

[2]All remaining document citations refer to documents within the lead case, 3:04-CV-556.

Robby Carson, Donnie Phillips, Carl Newport, and Scott County, Tennessee, but denying the motion as to defendant Marty Carson. [Doc. 58] On October 8, 2007, the plaintiffs filed their motion to amend the District Court's Order on the motion for summary judgment, asking the District Court to reconsider its ruling as to the plaintiffs' claims under Tenn. Code Ann. § 8-8-302, or, in the alternative, to remand those claims to the state court from which they were removed. [Doc. 60] On October 11, 2007, the remaining defendant moved the Court to reconsider its Order on summary judgment, asking the Court to dismiss the plaintiffs' loss of consortium claim under 42 U.S.C. § 1983. [Doc. 65] On October 16, 2007, the District Court granted the plaintiffs' motion, remanding the state claims to the Circuit Court for Scott County, Tennessee, and granted the defendant's motion, dismissing the plaintiffs' loss of consortium claims. [Doc. 70]

On October 19, 2007, the undersigned granted in part and denied in part the defendant's motion to exclude, excluding Mr. Qulia's expert testimony, but allowing his testimony as a fact witness. [Doc. 73] On November 2, 2007, the plaintiffs' appealed the Court's ruling as to Mr. Qulia [Doc. 90], but their appeal was denied. [Doc. 95]

On November 5, 2007, a seven day jury trial commenced, culminating on November 14, 2007, in a jury verdict in favor of the plaintiffs and awarding the plaintiffs $5,000,000.00 in compensatory damages. [Doc. 124] On November 29, 2007, the defendant filed his renewed motion for judgment as a matter of law, or, in the alternative, for remittitur. [Doc. 132]

On December 14, 2007, the plaintiffs filed the instant motion for attorneys' fees and costs.[3] [Doc. 137] On December 17, 2007, the plaintiffs filed their response in opposition to the defendant's renewed motion for judgment as a matter of law. [Doc. 138]

On January 7, 2008, the defendant filed his motion for extension of time to respond to the motion for attorneys' fees, arguing that the motion did not include a statement of hours and description of services for attorney Moncier (despite the passage of three weeks since the filing of the motion which had requested one week to file the same) and asking that the plaintiffs be given time to submit the same, and the defendant be given time to respond after the plaintiffs had submitted the necessary itemization. [Doc. 139] On January 8, 2008, the District Court granted the defendant's motion and specifically stated "the plaintiffs shall have until and including January 16, 2008, to submit necessary documentation in support of" their motion for attorneys' fees and allowing the defendant until and including January 23, 2008, to respond to the motion. [Doc. 140] Despite the request for additional time to supplement the motion with an accounting of attorney Moncier's hours and services rendered, and despite the defendant's pointing this omission out in his motion, and despite the Court granting even more time to submit "necessary documentation, " the plaintiffs did not supplement their motion for attorneys' fees.[4] On January 23, 2008, the defendant

---

[3]Attached as Exhibit 1 to said motion was a three page accounting of attorney Wigler's time. No such accounting was provided for attorney Moncier. Acknowledging the need to file the same, the plaintiffs sought one additional week to "provide an accounting of Mr. Moncier's time and an affidavit in support of his attorney fees." [Doc. 137 at p. 3]

[4]As of the entry of this Report and Recommendation, the plaintiffs still have not supplemented their motion to submit the "necessary documentation" (i.e. attorney Moncier's accounting of his services) in support of their motion.

4

requested, and was granted, a two day extension in which to respond to the motion for attorneys' fees. [Docs. 141, 142]

On January 25, 2008, the defendant filed his response to the motion for attorneys' fees, in which the defendant again specifically noted the absence of attorney Moncier's time records and affidavit. [Doc. 143] Over one month later, the motion for attorneys' fees was referred to the undersigned without any supplement having been filed. [Doc. 144] On March 12, 2008, the District Court denied the defendant's renewed motion for judgment as a matter of law. [Doc. 145] After the referral of the plaintiffs' motion for attorneys' fees, the Court took the matter under advisement, and it is now ripe for adjudication.

## II. ANALYSIS

### A. Positions of Parties

The plaintiffs move the Court for an award of fees for attorneys Herbert Moncier and David Wigler pursuant to 42 U.S.C. § 1988. Attorney Wigler attached an itemized list of his time spent and expenses incurred on behalf of the plaintiffs, but attorney Moncier did not. [Doc. 137] The plaintiffs were given additional time to supplement the motion as to attorney Moncier, but no so such supplement was filed.

Attorney Wigler seeks to be reimbursed for 349.1 hours at $250.00 per hour, for a total of $87,275.00. [Doc. 137] Attorney Moncier seeks to be reimbursed for 101.4 hours at $350.00 per hour, for a total of $35,490.00.[5] [Doc. 137] The plaintiffs also request that their fees be enhanced

---

[5]In their motion, plaintiffs' attorney Wigler states that attorney Moncier spent 3.5 hours in initial meetings with the plaintiffs, at least 24 hours in trial preparation, and 73.9 hours during trial, for a minimal total of 101.4 hours, but no documentation of any time was, nor has been, filed.

5

because of counsels' "exceptional success," citing Blum v. Stenson, 465 U.S. 886, 895 (1984), seeking a multiplier of three, for a total fee award of $261,825.00 for attorney Wigler and $106,470.00 for attorney Moncier, equaling a grand total of $368,295.00.

The defendant does not oppose the request of attorney Wigler, but does oppose the request of attorney Moncier, arguing that he has not provided documentation for the number of hours requested and that his hourly rate exceeds that previously approved in this district. The defendant also opposes the enhancement of fees in this case, arguing that this case was not so exceptional as to warrant enhancement. The Court will address the objections more fully below.

### B. Calculation of Lodestar Fee

Having determined the scope of the fees requested, the Court turns to the issue of the reasonableness of the fees charged by plaintiffs' counsel.

"'The primary concern in an attorney fee case is that the fee awarded be reasonable,' that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." Adcock-Ladd v. Secretary of Treasury, 227 F.3d 343, 349 (6th Cir. 2000) (quoting Reed v. Rhodes, 179 F.3d 453, 471 (6th Cir. 1999)). In deciding what constitutes a reasonable fee, the Court begins with determining the "lodestar" amount, which is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

One of the most important factors for the Court to consider in calculating the lodestar amount is the result obtained. Adcock-Ladd, 227 F.3d at 349. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." Hensley, 461 U.S. at 435. In the present case, while many of the plaintiffs' claims were dismissed, they did prevail as to the

6

remaining defendant and received a jury award of $5,000,000.00. Accordingly, the Court finds that the plaintiffs achieved excellent results in this case.

Even if an excellent result is achieved, however, a Court, within its discretion, may reduce the total number of hours claimed if they are unreasonable. Anglo-Danish Fibre Indus., Ltd. v. Columbian Rope Co., 2003 WL 223082, at *3 (W.D. Tenn. Jan. 28, 2003). "The question is not whether a party prevailed on a particular motion, nor whether, in hindsight, the time expended was strictly necessary to obtain relief achieved; instead, the question is whether a reasonable attorney would believe the work to be reasonably expended in pursuit of success at the time when the work was performed." Id. The plaintiff has the burden of demonstrating that the amount of hours claimed is reasonable. See Blum v. Stenson, 465 U.S. 886, 897 (1984).

### 1. **Hours Billed by Attorney Moncier**

With respect to the hours claimed by attorney Moncier, the defendant argues that, in the absence of documentary support of attorney Moncier's fee request, that the Court consider only the hours attorney Moncier was actually before the Court in trial, for a total of 74 hours. Given that the plaintiffs initially noted the necessity of filing attorney Moncier's accounting for attorney's fees and his affidavit in support and requested an additional week to file the same, coupled with the defendant's repeated noting and objection to this omission, as well as the Court Order [Doc. 140] extending additional time to file this "necessary documentation", the failure to file any such supporting documentation precludes any review or determination of reasonableness, and as such, the plaintiffs have failed to carry their burden of proving that the time requested by attorney Moncier was reasonable. The Court finds the defendant's arguments to be well-taken. Accordingly, the Court **RECOMMENDS** that the defendant's objection to attorney Moncier's fee request be

**SUSTAINED** and the hours claimed by attorney Moncier be reduced by 27.4 hours, for a total request of 74.0 hours.

2. **Hours Billed by Attorney Wigler**

In the absence of any objection by the defendant, and the Court having considered the itemized request of attorney Wigler, the Court finds attorney Wigler's claim request of 349.1 hours to be reasonable.

3. **Objection to Attorney Moncier's Hourly Rate**

Having determined the number of hours reasonably expended, the Court must now determine a reasonable hourly rate. The defendant objects to attorney Moncier's hourly rate of $350.00, arguing that the rate is too high for the relevant community of Knoxville, Tennessee. The defendant has no objection to the $250.00 rate charged by attorney Wigler.

In determining a reasonable hourly rate, the Court must initially examine the "prevailing market rates in the relevant community." Blum v. Stenson, 465 U.S. 886, 895 (1984). Courts in this district have previously ruled that an hourly rate of $250.00 is reasonable for this market. Hance v. Norfolk Southern Railway Co., No. 3:04-CV-160, slip op. at 18 (E.D. Tenn. Sept. 21, 2007); Killian v. Yorozu Automotive Tennessee, Inc., No. 4:02-CV-39, slip op. at 4-5 (E.D. Tenn. Oct. 6, 2006). Consistent with those prior rulings, the Court again finds that $250.00 is a reasonable hourly rate for the practice of law in the Eastern District of Tennessee. Accordingly, the Court **RECOMMENDS** that the defendant's objection to attorney Moncier's hourly rate be **SUSTAINED**, and that both attorney Moncier and attorney Wigler be reimbursed for their reasonable hours expended at a rate of $250.00 per hour.

**4.     Enhancement for Exceptional Success**

In addressing the use of fee multipliers, the Sixth Circuit has held that:

> [i]n some cases of "exceptional success" counsel may be entitled to a fee multiplier. We have held that in evaluating such a request a district court may consider the 12-factor test announced in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974): (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Jordan v. City of Cleveland, 464 F.3d 584, 604 (6th Cir. 2006) (internal citations omitted). The Supreme Court, however, has limited the application of the Johnson factors, holding that "many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." Hensley, 461 U.S. at 434 n. 9. In addressing the post Hensley changes to the use of fee multipliers, the Sixth Circuit has held that:

> The Supreme Court has emphasized that, although application of the Johnson factors is limited, upward adjustments are permissible in certain "rare" and "exceptional" cases. We also note that the Supreme Court has not had occasion to individually address each of the factors; it has only provided specific guidance concerning some of them. In its clearest pronouncement concerning the Johnson factors, the Supreme Court held that neither the complexity nor novelty of the issues in a case is an appropriate factor in determining whether to increase the basic fee award. With respect to risk - that is, the risk of not prevailing in the litigation - the Supreme Court has held this factor applicable only where the trial court specifically finds that the case is one of the "exceptional" cases in which an upward adjustment is appropriate and that there was real risk of not prevailing in the case. In addition, as a general rule, the upward adjustment for risk may be no more than one third of the lodestar, and

"any additional adjustment [for risk] would require the most exacting justification." Because the "rare" and "exceptional" determination must precede any risk analysis, the district court [under review] was not even permitted to reach the risk analysis, having never considered whether this case is one of the rare and exceptional ones meriting an upward adjustment.

Of the factor pertaining to the quality of counsel's representation, the Supreme Court stated in <u>Blum</u> that it is "generally . . . reflected in the reasonable hourly rate," although it may still justify an upward adjustment "in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success was "exceptional'." Similarly, with respect to the factor pertaining to the "results obtained," the Supreme Court stated that it "generally will be subsumed within other factors used to calculate a reasonable fee" and "normally should not provide an independent basis for increasing the fee award." But the Supreme Court was careful to stress that it was not blanketly precluding consideration of "results obtained," but rather establishing a presumption that that factor is included in the initial lodestar figure but may still be considered as part of an upward adjustment in exceptional cases: "We reiterate what was said in <u>Hensley</u>: 'where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhancement award may be justified." Lastly, to underscore its point that certain <u>Johnson</u> factors - including the "results obtained" - are applicable to a trial court's consideration of an upward adjustment in exceptional cases, the Supreme Court explicitly rejected petitioner's argument that an upward adjustment to an attorney's fee is never appropriate under § 1988.

The last Supreme Court case to consider the <u>Johnson</u> factors in any depth reaffirmed <u>Blum</u>. In <u>Pennsylvania v. Delaware Valley Citizens' Council for Clean Air</u>, 478 U.S. 546, 565 (1986) (hereinafter "Delaware Valley"), the Supreme Court noted that factors such as "the special skill and experience of counsel," the "quality of representation," and the "results obtained" from the litigation "are presumably fully reflected in the lodestar amount, and thus cannot serve as independent bases for increasing the basic fee award." Again, however, the Supreme Court stated that "upward adjustments of the lodestar figure are still permissible" and are proper "in certain 'rare' and 'exceptional' cases." In <u>Delaware Valley</u>, the

> Supreme Court does not purport to expand Blum in any way. Accordingly, we must construe its statement that certain Johnson factors "cannot serve as independent bases for increasing the basic fee award," not in isolation or as precluding use of those factors altogether, but rather in light of (1) the statements that precede it - namely that the named factors are "presumably" reflected in the lodestar fee, but not certainly so; (2) the statements that follow it, reiterating that upward adjustments are permissible in "rare" and "exceptional" cases; and (3) Blum, the case that that portion of Delaware Valley is summarizing, which preserved the use of the "results obtained" and the "quality of representation" for an upward adjustment analysis in those "rare" and "exceptional" cases.

Geier v. Sundquist, 372 F.3d 784, 795 (6th Cir. 2004) (internal citations omitted).

With this jurisprudence in mind, the Court finds that this case is not so rare or exceptional as to merit the use of a fee multiplier, nor have the plaintiffs provided sufficient reason for the Court to find otherwise. The factor relied upon by the plaintiffs, the contingent nature of the fee at issue, is one of the factors the Supreme Court has ruled should not generally serve as a basis for fee enhancement. City of Burlington v. Dague, 505 U.S. 557, 566 (1992); see also Wolfel v. Morris, 972 F.2d 712, 720 (6th Cir. 1992) (extending City of Burlington to fee enhancement awarded under 42 U.S.C. § 1988). Accordingly, the Court **RECOMMENDS** that the defendant's objection to the use of a fee multiplier in this case be **SUSTAINED**.

## III. CONCLUSION

For the foregoing reasons, it is **RECOMMENDED**[6] that the plaintiffs' motion for attorneys' fees [Doc. 137] be **GRANTED** and that the plaintiffs be awarded fees as follows:

| | | |
|---|---|---|
| Moncier's fees: | 74 hours x $250 hourly rate = | $18,500.00 |
| Wigler's fees: | 349.1 hours x $250 hourly rate = | $87,275.00 |
| TOTAL | | $105,775.00 |

As noted in footnote one above, pursuant to Local Rule 54.1, the Court leaves the issue of costs for the Clerk of the Court's consideration.

Respectfully submitted,

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[6]Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).